2003 UT App 414

Myrta ROSAS, as the natural mother of Alvaro Estrada, a minor, Plaintiff,

v.

Gary M. EYRE, father and natural guardian of Gary Elliott Eyre, a minor; Gary Elliott Eyre, individually; and Does I–X, Defendants, Third–Party Plaintiffs, and Appellants,

v.

Milbank Insurance and Does I–X, Third–Party Defendants and Appellee.

No. 20020898–CA.

Court of Appeals of Utah.

Nov. 28, 2003.

Robert B. Breeze, Salt Lake City, for Appellants.

Roger H. Bullock and James D. Franckowiak, Strong & Hanni, Salt Lake City, for Appellee.

Before Judges DAVIS, GREENWOOD, and THORNE, Jr.

## OPINION

GREENWOOD, Judge:

¶ 1 Gary E. Eyre, defendant and third-party plaintiff, appeals from the trial court's grant of summary judgment in favor of third-party defendant, Milbank Insurance (Milbank). Eyre argues the trial court erred when it concluded that Milbank had no duty to defend a lawsuit filed against Eyre by plaintiff, Myrta Rosas. Milbank argues that this court does not have jurisdiction to hear this appeal because Eyre failed to timely file a notice of appeal, and that even if this court does have jurisdiction, the trial court's grant of summary judgment was correct. Milbank further argues that Eyre's claim is barred by collateral estoppel. We affirm.

## BACKGROUND

¶ 2 On January 18, 2001, Eyre, a fifteen-year-old student, attacked and seriously injured fellow student, Alvaro Estrada, in a hallway of West High School. Estrada suffered from spina bifida and was confined to a wheelchair. Eyre punched Estrada in his chest, stomach, and the back of his head. Eyre then pushed Estrada out of his wheelchair, leaving Estrada lying on the ground. During the attack, Estrada sustained a perforated bladder, for which he ultimately underwent surgery.

¶3 A few days later, Eyre met with police and signed a written statement in which he admitted attacking Estrada. This led to the State charging Eyre with aggravated assault, in violation of Utah Code Annotated section 76-5-103 (1999). On March 1, 2001, the Third District Juvenile Court adjudicated that the State had proven, beyond a reasonable doubt, the aggravated assault charge.[1]

¶4 On July 31, 2001, Estrada, through his mother, Myrta Rosas, filed a complaint against Eyre, in which he alleged in part that the "action arose as a consequence of an assault"; that "[o]n January 18, 2001, ... Estrada, in a wheelchair due to spina bifida, was pushed by Defendant, Gary Eyre, who knocked him out of his wheelchair"; and that Estrada's injuries were "a direct and proximate result of [Eyre's] wrongful acts, omissions, negligence and recklessness." Estrada subsequently amended his complaint to add Gary M. Eyre (Eyre Sr.), Eyre's father, to the complaint.[2] In addition, the amended complaint alleged that Estrada had engaged in a battery rather than an assault.

¶5 Eyre Sr. filed a third-party complaint against Milbank, which had provided homeowner's insurance coverage to Eyre Sr. on the date Eyre assaulted Estrada. In the complaint, Eyre Sr. alleged that Milbank had wrongfully refused to defend Estrada's claim against Eyre. Milbank denied that it had a duty to defend Eyre.

¶6 Accordingly, Milbank filed a motion for summary judgment on the basis that its homeowner's policy only provided liability coverage for accidental occurrences, and consequently, it had no duty to defend Estrada's intentional tort claim. After a hearing, the trial court granted Milbank's motion for summary judgment. Estrada's attorney, who was present at the summary judgment hearing, agreed with the trial court's ruling, noting that "the amended complaint clearly sound[ed] ... in an intentional tort." The

trial court entered a minute entry granting the motion for summary judgment and directing Milbank to prepare a final order.[3]

¶7 Milbank prepared the final order and served it on Eyre on August 12, 2002. The order stated, inter alia, that Milbank was "entitled to summary judgment ... on the ground that plaintiff's claims against Gary E. Eyre [were] not covered as an occurrence under the policy." On August 16, 2002, Eyre filed an objection to Milbank's proposed order. The basis for the objection was that Milbank's order failed to "include a specific recitation that the Court found that the question of coverage was determined by the last Amended Complaint of Estrada and not by the terms of the insurance policy itself." Eyre's objection was accompanied by a copy of his own proposed order.

¶8 Without ruling on Eyre's objection, the trial court signed Milbank's order on August 19, 2002 (the August Order), and entered it in the court file on August 21, 2002. On October 4, 2002, the trial court reviewed both parties' proposed orders and signed Milbank's order (the October Order),[4] noting that "it correctly conform[ed] to the ruling the court made." On October 28, 2002, Eyre filed his notice of appeal from the trial court's grant of summary judgment.

## ISSUES AND STANDARDS OF REVIEW

¶9 Milbank argues that because Eyre did not timely appeal from the August Order, this court does not have jurisdiction to hear his appeal. "Whether appellate jurisdiction exists is a question of law...." *Pledger v. Gillespie*, 1999 UT 54,¶16, 982 P.2d 572.

¶10 Eyre argues that the trial court erred in granting Milbank's motion for summary judgment. "Summary judgment is granted only when 'there is no genuine issue as to any material fact' and 'the moving party is entitled to judgment as a matter of law.' "

---

1. Despite this adjudication, during a deposition taken several months later, Eyre denied that he had ever assaulted Estrada. Indeed, Eyre claimed he never saw Estrada until the date of his juvenile court trial.

2. Gary M. Eyre was subsequently dismissed from the action by stipulation of the parties.

3. The minute entry incorrectly stated that the "[c]ourt denies Motion for Summary Judgment."

4. The language in the October Order was identical to that of the August Order.

*Bearden v. Croft,* 2001 UT 76,¶ 5, 31 P.3d 537 (quoting Utah R. Civ. P. 56(c)). "Whether the trial court properly granted summary judgment is a question of law which we review for correctness, according no deference to the trial court's decision." *Fire Ins. Exch. v. Rosenberg,* 930 P.2d 1202, 1204 (Utah Ct. App.1997).

## ANALYSIS

### I. Jurisdiction

¶ 11 Milbank argues that this court should dismiss Eyre's appeal for lack of jurisdiction based on Eyre's failure to timely appeal from the August Order. Milbank asserts that under the Utah Rules of Appellate Procedure, Eyre's time period for filing an appeal expired on September 20, 2002, and that Eyre waited until October 28, 2002 before he filed his appeal.

¶ 12 An appeal may be taken from all final district court orders and judgments. *See* Utah R.App. P. 3(a). Unless there is a final order, this court lacks jurisdiction and must dismiss the appeal. *See State v. Rawlings,* 829 P.2d 150, 153 (Utah Ct.App.1992). Generally, a notice of appeal from a final order or judgment is timely only if filed "within 30 days after the date of entry of judgment or order appealed from." Utah R.App. P. 4(a). However, rule 4(b) of the Utah Rules of Appellate Procedure provides in relevant part:

> If a timely motion under the Utah Rules of Civil Procedure is filed in the trial court by any party (1) for judgment under Rule 50(b); (2) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59 to alter or amend the judgment; or (4) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new

trial or granting or denying any such motion.

◼ ¶ 13 In this case, it is undisputed that Eyre did not timely file his notice of appeal from the August Order granting Milbank's motion for summary judgment. However, this court nonetheless has jurisdiction to hear Eyre's appeal if his objection to Milbank's proposed order qualifies under rule 4(b) as a motion that "suspends the appeal period until 'entry of the order denying' it." *Regan v. Blount,* 1999 UT App 154,¶ 5, 978 P.2d 1051 (per curiam) (quoting Utah R.App. P. 3(a)). In resolving this jurisdictional question, we consider only whether Eyre's objection qualified as a rule 59(e) motion to alter or amend the judgment.[5]

¶ 14 In *Reeves v. Steinfeldt,* 915 P.2d 1073 (Utah Ct.App.1996), this court addressed the issue of whether Steinfeldt's objection to Reeves's findings and conclusions, filed after the final judgment had been signed and entered, constituted a post-judgment motion under rules 52 or 59 of the Utah Rules of Civil Procedure. *See id.* at 1075. Recognizing that Steinfeldt was doing more than merely objecting to Reeves's proposed findings and judgment, we concluded that Steinfeldt's objection was "in substance a Rule 59 motion, inasmuch as it ask[ed] the court to alter its findings and to amend its conclusions and judgment." *Id.* at 1077 (footnote omitted); *see also DeBry v. Fidelity Nat'l Title Ins. Co.,* 828 P.2d 520, 522–23 (Utah Ct.App.1992) ("Regardless of how it is captioned, a motion filed within ten days of the entry of judgment that questions the correctness of the court's findings and conclusions is properly treated as a post-judgment motion under either [r]ules 52(b) or 59(e)." (footnote omitted)).

¶ 15 In this case, Eyre objected to Milbank's proposed order because it failed to "include a specific recitation that the court found that the question of coverage was determined by the last Amended Complaint of

---

5. Defendant's motion clearly does not meet the requirements of any of the other motions listed under rule 4(b) of the Utah Rules of Appellate Procedure. It is not a motion for judgment notwithstanding the verdict under rule 50 because no verdict was ever rendered. *See* Utah R. Civ. P. 50(b). Nor is it a motion to amend or

make additional findings of fact under rule 52 because a decision to grant or deny a motion for summary judgment is not based on findings of fact. *See* Utah R. Civ. P. 52(b). Finally, Eyre's objection is not a motion for a new trial under rule 59 because this case was never tried. *See* Utah R. Civ. P. 59(a).

Estrada and not by the terms of the insurance policy itself." Eyre's objection was accompanied by a copy of his own proposed order. In other words, Eyre was not only objecting to Milbank's proposed order, but was also "urg[ing] the court to amend its findings and to alter its legal conclusions and judgment." *Reeves,* 915 P.2d at 1077. Therefore, Eyre's objection to Milbank's proposed order was "in substance a rule 59[ (e) ] motion" to alter or amend judgment. *Id.*

¶ 16 Moreover, although a rule 59(e) motion is technically a post-judgment motion, which cannot be served any "later than 10 days after the entry of the judgment," Utah R. Civ. P. 59(e), we have previously held that "a motion under the Utah Rules of Civil Procedure of the type described in Utah Rule of Appellate Procedure 4(b) that is filed prior to the entry of the judgment is timely for purposes of tolling the appeal period." *Regan,* 1999 UT App 154 at ¶ 6, 978 P.2d 1051. Therefore, although Eyre filed his objection prior to the entry of the trial court's order granting summary judgment, it nonetheless qualified as a timely post-judgment motion that "suspend[ed] the appeal period until 'entry of the order denying' it." *Id.* at ¶ 5 (quoting Utah R.App. P. 3(a)).

¶ 17 Having determined that Eyre's objection constituted a timely post-judgment motion under rule 59, the only remaining issue is when, if at all, the trial court ruled on Eyre's objection. It is clear from the record that when the trial court entered the August Order, it was not ruling on Eyre's objection, either explicitly or implicitly. As we have previously noted, "[t]he mere entry of a final judgment inconsistent with but silent regarding a post-trial pre-judgment motion does not dispose of the motion by necessary implication unless the surrounding circumstances indicate that the trial court considered and rejected the motion." *Id.* at ¶ 7. Eyre filed his objection on August 16, 2002, a mere three days before the trial court signed the August Order. There is nothing in the record that indicates that the trial court addressed, or was even aware of, Eyre's objec-

tion when it signed the August Order. Therefore, we conclude that the trial court did not rule on Eyre's objection when it signed the August Order.

¶ 18 On the other hand, when the trial court signed and entered the October Order, it did so only after considering both of the parties' proposed orders. The trial court noted that it signed Milbank's order because "it correctly conform[ed] to the ruling the court made." Therefore, the trial court implicitly ruled on Eyre's objection when it signed and entered the October Order. *See Morgan v. Morgan,* 875 P.2d 563, 564 n. 1 (Utah Ct.App.1994) (noting that when trial court signed plaintiff's proposed order, it implicitly ruled on defendant's objections to plaintiff's proposed order because defendant's objections were before trial court at the time). Accordingly, because Eyre filed his notice of appeal on October 28, 2002, which is within thirty days of the October Order, we hold that this court has jurisdiction to hear his appeal.

## II. Summary Judgment

¶ 19 The trial court determined that Milbank owed Eyre no duty to defend Estrada's underlying claim against Eyre because the incident giving rise to Estrada's claim "was not covered as an occurrence under [Milbank's] policy." On appeal, Eyre argues that the trial court erred because Alvaro accidently fell out of his wheelchair.[6] According to Eyre, this "accident" qualified as an "occurrence" under Milbank's policy, and therefore, Milbank owed Eyre a duty to defend him in the underlying action brought by Estrada. We disagree.

¶ 20 Milbank issued its homeowner's policy to Eyre Sr. for the policy period from September 2, 2000, to September 2, 2001. The relevant portions of the homeowner's policy provided as follows:

*SECTION II—LIABILITY COVERAGES*
*COVERAGE E—Personal Liability*

If a claim is made or a suit is brought against an insured for damages because of

---

6. Although Eyre claims that Estrada accidentally fell out of his wheelchair, he does not argue on appeal that he negligently caused Estrada to fall.

As stated earlier, Eyre denies ever seeing Estrada until the date of his juvenile court appearance on the aggravated assault charge.

bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent

. . . .

. . . .

*DEFINITIONS*

5. occurrence means an accident including exposure to conditions, which results, during the policy period, in:

   a. bodily injury; or

   b. property damage.

   . . . .

*SECTION II—EXCLUSIONS*

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

   a. which is expected or intended by the insured. . . .

■■■ ¶ 21 "As a general rule, an insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." *Fire Ins. Exch. v. Estate of Therkelsen*, 2001 UT 48,- ¶ 21, 27 P.3d 555 (quotations and citations omitted). "In such a case it would be error for the trial court to consider extrinsic evidence, as it is wholly irrelevant to the issue of whether the insurer has a duty to defend its insured." *Id.* at ¶ 23 (footnote omitted). "However, if . . . the parties make the duty to defend dependent on whether there is actually a 'covered claim or suit,' extrinsic evidence would be relevant to a determination of whether a duty to defend exists." *Id.* at ¶ 25. Therefore, we must first determine whether Milbank's policy made the duty to defend dependent on the allegations in the complaint or on extrinsic evidence.

¶ 22 As an example of a policy where the duty to defend is determined by the allegations contained in the complaint, the court in *Therkelsen* cited to a " 'standard homeowners policy [which] provides that the in-

surer will "provide a defense at [the insurer's] expense by counsel of [the insurer's] choice, even if the suit is groundless, false or fraudulent." ' " *Id.* at ¶ 23 (second and third alterations in the original) (citations omitted). On the other hand, as an example of a policy where extrinsic evidence could be considered in determining whether a duty to defend existed, the court cited to "an insurance policy that described the duty to defend as follows: 'At our expense and with attorneys of our choice, we will defend an *insured* against any covered claim or suit.' " *Id.* at ¶ 24 (quoting *Fire Ins. Exch. v. Rosenberg*, 930 P.2d 1202, 1203 (Utah Ct.App.1997)).

■■■ ¶ 23 Milbank's policy stated that "we will . . . provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent." Therefore, Milbank's policy made the duty to defend dependent upon the allegations in a complaint rather than on extrinsic evidence.

■■■ ¶ 24 However, this does not mean Milbank was required to defend any allegation against someone insured under its homeowner's policy. An insurer's duty to defend extends only to "any complaint alleging facts which, if proven, would render the insurer liable for indemnification of its insured." *Simmons v. Farmers Ins. Group*, 877 P.2d 1255, 1258 n. 3 (Utah Ct.App.1994). The provision of Milbank's policy relating to liability coverage provides that "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence," Milbank will pay "for damages for which the insured is legally liable." The policy further defines the term "occurrence" as "an accident, including exposure to conditions, which results . . . in: a. bodily injury; or b. property damage." Therefore, Milbank only had a duty to defend Estrada's underlying claim if Estrada's complaint alleged that his injuries were the result of an "accident."

¶ 25 In *Therkelsen*, the court defined the word "accident" as follows:

the word [accident] is descriptive of means which produce effects which are not their natural and probable consequences. . . . An effect which is the natural and probable

consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds.

*Id.* at ¶ 15 (alteration in original) (quotations and citations omitted).

¶ 26 It is clear that the allegations contained in Estrada's amended complaint were not based on an "accident," as defined by the court in *Therkelsen.* The only cause of action listed in the complaint "arose as a consequence of a battery." [7] Moreover, the facts alleged in the complaint clearly demonstrate that a cause of action based solely on an intentional tort was intended. The complaint stated that "Estrada, in a wheelchair due to spina bifida, was pushed by Defendant, Gary Elliott Eyre, who knocked him out of his wheelchair." Therefore, because the allegations contained in Estrada's complaint arose out of an intentional tort, for which there was no coverage under Milbank's homeowner's policy, Milbank's duty to defend, including its duty to defend groundless or fraudulent claims, did not extend to Estrada's underlying claim against Eyre.

¶ 27 Accordingly, we hold that the trial court properly granted Milbank's motion for summary judgment as it related to Milbank's duty to defend under its homeowner's policy.[8]

## CONCLUSION

¶ 28 Eyre's objection to Milbank's proposed order, although filed prior to the entry of judgment, is properly considered a post-judgment motion to alter or amend the judgment under rule 59(e) of the Utah Rules of Civil Procedure. Consequently, it qualifies as a motion under rule 4(b) of the Utah Rules of Appellate Procedure that suspends the time to appeal until the trial court has ruled on the motion. The trial court did not rule on Eyre's objection until October 4, 2002. Eyre timely filed his notice of appeal on October 28, 2002. Therefore, we hold that this court has jurisdiction to hear Eyre's appeal.

¶ 29 With respect to the merits of Eyre's appeal, we affirm the trial court's grant of Milbank's motion for summary judgment. Milbank was not obligated to defend Estrada's claim against Eyre because the allegations in Estrada's complaint were based solely on the intentional tort of battery, which was not covered as an "occurrence" under Milbank's policy. Therefore, we hold that the trial court did not err in granting summary judgment to Milbank. We affirm.

¶ 30 WE CONCUR: JAMES Z. DAVIS and WILLIAM A. THORNE JR., Judges.

---

7. Although the complaint also stated that Estrada's injuries were the result of Eyre's "wrongful acts, omissions, negligence and recklessness," and his "negligent and reckless behavior," Estrada's attorney agreed with the trial court that Estrada's "amended complaint clearly sound[ed] ... in an intentional tort."

8. Because we hold that Milbank did not owe Eyre a duty to defend, we do not reach the issue of whether Eyre's claim is barred by collateral estoppel.