2011 UT 49

**EQUINE ASSISTED GROWTH AND LEARNING ASSOCIATION,**
Plaintiff and Appellee,

v.

**CAROLINA CASUALTY INSURANCE COMPANY, Defendant and Appellant.**

No. 20090676.

Supreme Court of Utah.

Aug. 19, 2011.

James L. Harris, Salt Lake City, for plaintiff.

Gregory J. Sanders, Patrick C. Burt, Salt Lake City, for defendant.

Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 In this petition, we must decide whether the court of appeals correctly concluded that the district court erred when it refused to consider extrinsic evidence to determine that an insurer did not have a duty to defend an insured under the terms of an insurance policy. We affirm the court of appeals' decision and hold that the district court erred when it refused to consider extrinsic evidence as required by the terms of the insurance policy.

## BACKGROUND

¶ 2 In March 2005, Greg Kersten resigned as the chief executive officer and trustee of Equine Assisted Growth and Learning Association (EAGALA). He remained a paid employee of EAGALA until his employment was terminated on November 16, 2005. The day after his termination, Mr. Kersten sued EAGALA's board of trustees seeking monetary damages and injunctive relief. Mr. Kersten captioned the complaint so it appeared that EAGALA was the plaintiff, and Mr. Kersten signed the complaint as "President and CEO" of EAGALA. Although Mr. Kersten had no authority to sue on EAGALA's behalf, he nevertheless obtained a temporary restraining order giving him control of EAGALA. The EAGALA board members were forced to demonstrate that Mr. Kersten was no longer affiliated with EAGALA and that he had no standing to sue in its name. The district court eventually dissolved the temporary restraining order, and Mr. Kersten voluntarily dismissed the case. EAGALA incurred substantial costs defending itself and its board members against Mr. Kersten's miscaptioned suit.

¶ 3 EAGALA notified its insurance carrier, Carolina Casualty, of Mr. Kersten's complaint and requested coverage for the costs of its defense. Carolina Casualty had issued

EAGALA a nonprofit organization liability insurance policy. The policy covered the "Costs of Defense," defined as the "costs and expenses ... resulting solely from the investigation, defense and appeal of any Claim against the Insureds." It defines a "Claim" as "a written demand for monetary or non-monetary relief including ... a civil, criminal, administrative or arbitration proceeding." However, the policy excluded from coverage "any Claim made against an Insured ... by, on behalf of, or in the right of the Insured Entity."

¶4 Carolina Casualty denied coverage, contending that the complaint was brought "by, on behalf of, or in the right of [EAGALA]." Even after EAGALA explained that Mr. Kersten had no authority to file the complaint, Carolina Casualty argued that it was still an excluded claim because the complaint was captioned in EAGALA's name.

¶5 EAGALA sued Carolina Casualty to establish coverage for the costs of defending Mr. Kersten's unsuccessful suit. Carolina Casualty sought judgment on the pleadings on the basis that any claim in the complaint was one "by, on behalf of, or in the right of [EAGALA]" because it was captioned as such. In response, EAGALA proffered extrinsic evidence that Mr. Kersten had no authority to sue in EAGALA's name and, therefore, the "insured versus insured" exclusion to coverage did not apply. But the district court refused to consider any extrinsic evidence. Instead, it compared the complaint with the policy and held that, on its face, Mr. Kersten's complaint fell within the "insured versus insured" exclusion to coverage. The district court reasoned that "the general rule is that in order to discern whether a duty to defend exists ... a court [must] examine the allegations in the underlying [c]omplaint in light of the relevant poli-

cy language." The district court held that in making this determination, "[e]xtrinsic evidence is ... unnecessary and, in fact, ... improper for the [c]ourt to consider...." Based on this reasoning, the district court granted Carolina Casualty's motion for judgment on the pleadings and dismissed EAGALA's complaint.

¶6 EAGALA appealed, and the court of appeals reversed.[1] Relying on *Fire Insurance Exchange v. Estate of Therkelsen*,[2] the court of appeals explained that whether extrinsic evidence is admissible in the duty-to-defend analysis turns on the parties' contractual terms.[3] The court of appeals concluded that under the language of the insurance policy, extrinsic evidence was admissible to determine whether the complaint was "actually" filed "by, on behalf of, or in the right of [EAGALA]."[4] Carolina Casualty filed a petition for writ of certiorari, which we granted. We have authority to hear and decide this petition under Utah Code section 78A–3–102(3)(a).

### STANDARD OF REVIEW

■ ¶7 "On certiorari, we review the court of appeals' decision for correctness."[5]

### ANALYSIS

■ ¶8 The court of appeals concluded that the insurance policy Carolina Casualty issued to EAGALA conditioned the duty to defend upon information not contained in the complaint, and therefore, the district court should have examined extrinsic evidence in its analysis of the duty to defend outlined in the policy. "'An insurance policy is merely a contract between the insured and the insurer.'"[6] An insurer's "'duty to defend arises solely under [the terms of the] contract.'"[7] This duty is broader than the duty to indem-

---

1. *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 2009 UT App 200, ¶¶ 7–8, 216 P.3d 971.

2. 2001 UT 48, 27 P.3d 555.

3. *See Equine*, 2009 UT App 200, ¶ 6, 216 P.3d 971.

4. *Id.* ¶ 7.

5. *Ostermiller v. Ostermiller*, 2010 UT 43, ¶ 14, 233 P.3d 489 (internal quotation marks omitted).

6. *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 14, 140 P.3d 1210 (quoting *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993)).

7. *Fire Ins. Exch. v. Estate of Therkelsen*, 2001 UT 48, ¶ 22, 27 P.3d 555 (quoting *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 141 (Utah 1997)).

nify.[8] It is triggered whenever "the insurer ascertains facts giving rise to potential liability under the insurance policy."[9] "Where factual questions render coverage uncertain ... the insurer must defend until those uncertainties can be resolved against coverage."[10]

¶ 9 We examined the scope of the duty to defend in *Fire Insurance Exchange v. Estate of Therkelsen.*[11] There we noted that an insurance contract may base the duty to defend on the face of the complaint and its allegations, or on the facts and circumstances underlying the complaint.[12] Whether a court may consider extrinsic evidence depends on how the duty is described in the contract.[13]

¶ 10 On one hand, when the terms of an insurance contract condition the duty to defend upon allegations contained on the face of the complaint, "extrinsic evidence is irrelevant to ... determin[e] ... whether a duty to defend exists."[14] For example, an insurer would have no duty to defend an insured based on a complaint sounding solely in battery when the policy excludes intentional torts from coverage. Under these circumstances, the "duty-to-defend analysis ... focus[es] on two documents: the insurance policy and the complaint. 'An insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations of the complaint,'"[15] and extrinsic evidence plays no part in the analysis.

¶ 11 On the other hand, when policy terms define the scope of the duty to defend in reference to something other than the allegations in the complaint, a court may look beyond the text of the complaint to determine whether the duty has been triggered.[16] In that situation, an inquiry limited to the face of the policy and the complaint leaves unanswered the question of whether the insurer has a duty to defend. Thus, while the analysis always begins with an examination of the policy language and the complaint, it ends there only if the policy terms when compared with the allegations definitively indicate that there is or is not a duty to defend. Otherwise, the duty-to-defend inquiry requires information that must be presented in the form of extrinsic evidence.

¶ 12 Applying this framework, we begin our analysis by examining the language of the contract. We then compare the relevant policy provisions with the complaint to determine whether the contract conditions the duty to defend solely in reference to the complaint. Finding that this comparison neither eliminates nor establishes a duty to defend, we conclude that the relevant contractual provision ties the duty to defend to facts not contained in the complaint. As a result, we hold that extrinsic evidence is necessary to determine whether Carolina Casualty had a duty to defend EAGALA.

## I. THE POLICY, WHEN COMPARED TO THE COMPLAINT, DOES NOT INDICATE WHETHER THE DUTY TO DEFEND HAS BEEN TRIGGERED

¶ 13 The primary purpose of contract interpretation is to "ascertain the inten-

---

**8.** *Id.*

**9.** *Sharon Steel,* 931 P.2d at 133; *see also Benjamin,* 2006 UT 37, ¶ 16, 140 P.3d 1210 ("The test is whether the complaint alleges a risk within the coverage of the policy." (internal quotation marks omitted)).

**10.** *Benjamin,* 2006 UT 37, ¶ 22, 140 P.3d 1210; *see also* 22 Gordon L. Ohlsson, Holmes' Appleman on Insurance 2d § 136.2[D] (2003 & Supp. 2009) ("[W]hen there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside of the policy coverage.").

**11.** 2001 UT 48, 27 P.3d 555.

**12.** *See id.* ¶¶ 22–25.

**13.** *See id.* ¶ 25 ("[W]hether extrinsic evidence is admissible to determine whether an insurer has a duty to defend an insured turns on the parties' contractual terms.").

**14.** *Id.*

**15.** *Benjamin,* 2006 UT 37, ¶ 16, 140 P.3d 1210 (quoting *Therkelsen,* 2001 UT 48, ¶ 21, 27 P.3d 555).

**16.** *See Therkelsen,* 2001 UT 48, ¶ 25, 27 P.3d 555 ("[I]f, for example, the parties make the duty to defend dependent on whether there is actually a 'covered claim or suit,' extrinsic evidence would be relevant to a determination of whether a duty to defend exists.").

tions of the parties" at the time of contracting.[17] To discover these intentions, we first examine the plain language of the contract.[18] Additionally, we "consider each contract provision ... in relation to all of the others, with a view toward giving effect to all and ignoring none." [19]

¶ 14 The insurance agreement between Carolina Casualty and EAGALA states in relevant part that the "Policy shall pay on behalf of the Insureds all Loss ... arising from any Claim made against the Insureds during the Policy Period." The policy defines "Loss" as "Damages and Costs of Defense." It further defines "Costs of Defense" as "reasonable and necessary fees, costs, and expenses ... resulting solely from the investigation, adjustment, defense and appeal of any Claim against the Insureds."

¶ 15 While the insurance agreement provides a broad duty to defend any claim brought against EAGALA and its agents, it narrows that duty with a list of coverage exclusions. Among these exclusions is an "insured versus insured" clause that excludes from coverage claims brought by EAGALA against itself or its agents. Specifically, the policy states that "[t]he insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured ... by, on behalf of, or in the right of [EAGALA]."

¶ 16 Having identified the relevant contractual provisions, we turn to the face of the complaint to determine whether the terms either establish or eliminate a duty to defend when compared to the policy. It is undisputed that Mr. Kersten captioned the complaint as if EAGALA were the plaintiff and that he purported to verify the complaint as EAGALA's "President and CEO." It is also undisputed that Mr. Kerston had been terminated and had no authority to sue in EAGALA's name when he filed the complaint. Thus, the

question we must answer is whether a complaint that is incorrectly captioned in a manner designed to make it appear as if it were a legitimate lawsuit in which EAGALA is the plaintiff is a claim made "by, on behalf of, or in the right of [EAGALA]" under the terms of the insurance agreement.

¶ 17 Although Carolina Casualty concedes that Mr. Kersten had no authority to caption the complaint in EAGALA's name, it contends that Mr. Kersten's authority is immaterial. Specifically, Carolina Casualty argues that a duty to defend may arise only within the "eight corners" of the policy and the complaint and that extrinsic evidence is inadmissible and irrelevant when determining whether a duty to defend exists. It reasons that because the complaint was captioned as though it were brought by EAGALA, the "insured versus insured" clause governs, and Carolina Casualty did not have a duty to defend EAGALA. Carolina Casualty further argues that any indication in *Therkelsen* that extrinsic evidence is relevant in the duty-to-defend analysis is dicta, or, to the degree that it is not dicta, it should be overruled. We disagree.

¶ 18 Because an insurance policy is a contract, we examine the language of the policy and compare it to the allegations made in a complaint to ascertain the scope of coverage provided by the policy. This so-called "eight corners" rule allows us to determine whether the allegations alone trigger the terms that provide the duty to defend in the insurance policy. If the language found within the collective "eight corners" of these documents clearly and unambiguously indicates that a duty to defend does or does not exist, the analysis is complete. However, if coverage is premised on information not contained in the complaint, we must continue our inquiry to examine that information.[20]

17. *WebBank v. Am. Gen. Annuity Serv. Corp.,* 2002 UT 88, ¶ 17, 54 P.3d 1139.

18. *Glenn v. Reese,* 2009 UT 80, ¶ 10, 225 P.3d 185; *see also Green River Canal Co. v. Thayn,* 2003 UT 50, ¶ 17, 84 P.3d 1134 ("If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a

matter of law." (internal quotation marks omitted)).

19. *Glenn,* 2009 UT 80, ¶ 10, 225 P.3d 185 (alteration in original) (internal quotation marks omitted).

20. 22 GORDON L. OHLSSON, HOLMES' APPLEMAN ON INSURANCE 2D § 136.2[C] (2003 & Supp. 2009) ("When pleadings are of an indefinite, vague,

¶ 19 The fact that Mr. Kersten brought an unauthorized suit and miscaptioned his complaint in the name of EAGALA did not trigger the exclusion at issue. As noted by the court of appeals, whether a claim is made "by, on behalf of, or in the right of [EAGALA]" is an "objective fact[ ], the truth or falsity of which [is] not determined solely by the allegations, or in this case, the captioning, of the ... complaint." [21] In light of the language defining the scope of the exclusion, an analysis limited to the "eight corners" of the policy and the complaint is incomplete and fails to resolve the central inquiry: Was the claim brought "by, on behalf of, or in the right of [EAGALA]"? Because this question cannot be answered through an inspection of the complaint alone, the court's examination must go on to develop the facts relevant to answer the inquiry. Accordingly, the court of appeals correctly concluded that the district court erred when it discontinued its analysis and limited its examination to the "eight corners" of the policy and complaint.

## II. EXTRINSIC EVIDENCE IS NECESSARY TO DETERMINE WHETHER CAROLINA CASUALTY HAD A DUTY TO DEFEND UNDER THE TERMS OF THE INSURANCE POLICY

¶ 20 Because an "eight corners" analysis of the contract language and the complaint does not indicate whether Carolina Casualty had a duty to defend, extrinsic evidence may be considered to make this determination. Carolina Casualty argues that consideration of extrinsic evidence to determine whether a duty to defend arises under the terms of the policy "is not reasonably workable in the real world" and will "require an insurer to conduct an investigation with no power of discovery" every time the insured invokes the duty. We are not persuaded.[22]

¶ 21 It is certainly conceivable that Carolina Casualty could have drafted its "insured versus insured" exclusion to bring this case within the "eight corners" rule. As the court of appeals noted, it is likely that exclusion language relieving Carolina Casualty of the duty to defend against suits brought "in the name of" EAGALA would have accomplished this objective.[23] But that is not the contract language before us, and a court cannot limit its analysis of the duty to defend to the face of the complaint when the plain language of the policy directs otherwise. Instead, the terms of the insurance agreement require a court to determine whether a claim is brought "by, on behalf of, or in the right of the Insured Entity." Because we agree with the court of appeals that this cannot be determined by examining the face of the complaint alone, we affirm the court of appeals' determination that it was error for the district court to refuse to consider extrinsic evidence in its analysis of whether a duty to defend arose under the terms of the insurance policy.

## CONCLUSION

¶ 22 An insurance contract may premise the duty to defend on information in the complaint. However, when an insurance policy conditions the duty to defend on something outside of the complaint, extrinsic evidence is necessary to determine whether the duty has been triggered. In this case, Carolina Casualty issued a policy that hinged the duty to defend on whether the claim was

and ambiguous nature ... the insurer has a duty to defend the insured, at least until the pleadings are clarified. Any doubts as to the insurer's duty to defend raised by the complaint will be resolved in the insured's favor." (footnote omitted)).

21. *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 2009 UT App 200, ¶ 7, 216 P.3d 971.

22. This court has previously declared that an "insurer must make a good faith determination based on all the facts known to it, or which by reasonable efforts could be discovered by it," whether there is a duty to defend under the terms of an insurance policy. *Deseret Fed. Sav. & Loan Ass'n v. U.S. Fid. & Guar. Co.*, 714 P.2d 1143, 1147 (Utah 1986). In this case, it is undisputed that Mr. Kersten did not have the authority to bring suit on behalf of EAGALA. As a result, there is no basis for Carolina Casualty's argument that an investigation into the relevant underlying facts would be so onerous as to be unreasonable.

23. *See Equine*, 2009 UT App 200, ¶ 7 n. 4, 216 P.3d 971.

brought "by, on behalf of, or in the right of [EAGALA]." Because this determination is based on objective facts that are not apparent from the face of the complaint, the district court erred when it refused to consider extrinsic evidence proffered by EAGALA in opposition to Carolina Casualty's Motion for Judgment on the Pleadings. Accordingly, we affirm the decision of the court of appeals, reversing the district court's dismissal of EAGALA's action, and we remand this matter for further proceedings consistent with this opinion.

¶ 23 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice LEE concur in Justice NEHRING'S opinion.