**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

REAGAN NATIONAL
ADVERTISING, AND REAGAN
NATIONAL ADVERTISING OF
AUSTIN, INC., AND REAGAN
OUTDOOR ADVERTISING, INC.,

Plaintiffs - Appellants,

v.

HARTFORD CASUALTY
INSURANCE COMPANY,

Defendant - Appellee.

No. 05-4131
(D.C. No. 2:03-CV-00967-PGC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**EAGAN**, District Judge.[**]

Plaintiffs-Appellants Reagan National Advertising, Reagan National

Advertising of Austin, Inc., and Reagan Outdoor Advertising, Inc. (collectively

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Claire V. Eagan, United States District Judge for the
Northern District of Oklahoma, sitting by designation.

"Reagan") appeal from an order of the district court denying Reagan's Motion for Partial Summary Judgment and granting the Cross-Motion for Summary Judgment of defendant-appellee Hartford Casualty Insurance Company ("Hartford").  On appeal, Reagan argues that the district court erred in failing to conclude that Hartford owes a duty to defend and indemnify Reagan for claims alleged in a lawsuit captioned Harrill et al. v. Reagan National Advertising of Austin, Inc., C.A. No. A03CA-51H (W.D. Tex.).[1]  The district court found that the insurance policy upon which Reagan bases its claims for a declaratory judgment and breach of contract against Hartford did not provide coverage.  We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

Background

Reagan owns and maintains advertising billboards in various states. Landowners and competitors of Reagan in the billboard advertising market around Austin, Texas filed a class action lawsuit against Reagan on January 14, 2003. They essentially alleged that Reagan attempted to monopolize the billboard market in violation of Texas antitrust laws by abusing the regulatory regime for billboard advertising in the Austin, Texas market.  The original petition included claims for antitrust violations as well as for tortious interference, tortious interference with prospective business relations, interference with property rights,

---

[1]The case was originally filed as No. GN300124, in the District Court of Travis County, Texas, 201st Judicial District.  Thereafter, it was removed to federal court on diversity grounds.

and breach of contract, but it did not specifically contain a claim for malicious prosecution.

Reagan attempted to tender the defense of the lawsuit to Hartford, relying on language in the policy requiring Hartford to defend Reagan against any suit seeking damages for "personal and advertising injury."[2] The policy defines "personal and advertising injury" as injury "arising out of" malicious prosecution, among other things. Aplt. App. at 114. Hartford refused, based upon policy language which excludes coverage for personal and advertising injury arising out of a violation of any antitrust law. Aplt. App. at 105. After Reagan filed this action, the remaining plaintiff in Harrill filed an amended petition which, in relevant part, alleges violations of Texas antitrust law, malicious prosecution, and tortious interference. Reagan renewed its demand for defense and indemnification under the Hartford policy, but Hartford did not respond due to the procedural posture of the litigation.

Standard of Review

_____

[2]Reagan also relied on "Coverage A" of the policy for claims alleging bodily injury and property damage liability. The district court ruled that the claims alleged in Harrill did not trigger a duty to defend under Coverage A, but Reagan has not appealed that part of the district court's ruling. In addition, Reagan has not contested the district court's ruling in favor of National Casualty Insurance, d/b/a Media Professional Insurance ("National"), which had agreed to provide a partial defense to Reagan in Harrill under a reservation of rights. Reagan's claims against National were settled prior to this appeal. All of the underlying claims in Harrill were settled in 2003.

-3-

We review the district court's order granting summary judgment *de novo*, applying the same standards as the district court under Rule 56 of the Federal Rules of Civil Procedure. E.g., Zamora v. Elite Logistics, Inc., 449 F.3d 1106, 1111 (10th Cir. 2006). Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. Zamora, 449 F.3d at 1112 (citation omitted). We resolve all factual disputes and draw all reasonable inferences in favor of the non-moving party. Id. (citation omitted). If there is no genuine issue of material fact, the court determines whether the substantive law was correctly applied by the district court. Id. (citation omitted).

## Discussion

Reagan argues that the district court erred because the policy provides coverage against claims and for damages allegedly arising out of malicious prosecution, and the ambiguity as to that term must be resolved in Reagan's favor. Reagan also contends that the antitrust exclusion does not relieve Hartford of its duty of defense because the allegations of malicious prosecution in Harrill were capable of surviving even if the antitrust claims failed. Hartford argues that the allegations in Harrill did not meet the elements for a malicious prosecution claim and, even if they did, all of the claims, including the malicious prosecution

-4-

claim, arise out of violations of Texas antitrust laws and are thus excluded under the policy.

The district court did not address whether the petitions in Harrill stated a claim for malicious prosecution; it focused instead on the policy's antitrust exclusion. Reagan points out that the district court made no determination as to whether Utah or Texas law applies to the case because the district court's ruling did not require it to examine Reagan's argument that the term "malicious prosecution" in the policy is ambiguous and, therefore, that Hartford was obligated to defend the allegations of "sham litigation" and abuse of process in Harrill. The district court stated that no conflict of law determination was necessary because the parties had agreed that the outcome would be the same regardless of whether Texas or Utah law applied. Reagan now argues that it agreed to the similarity in Texas and Utah law on the issue of insurance policy interpretation, but it did not agree that Utah and Texas law are the same as to malicious prosecution. In any event, we find no reason to resolve the conflict of law issue or to address whether the petitions alleged the required elements for malicious prosecution because, under the undisputed facts of this case, the antitrust exclusion applies.

In both Texas and Utah, an insurer's duty to defend is determined by comparing the allegations of the underlying proceedings with the language of the insurance policy. E.g., King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex.

2002); <u>Fire Ins. Exch. v. Therkelsen</u>, 27 P.3d 555, 560 (Utah 2001).[3] An insurer is obligated to defend when the complaint allegations, if proved, could result in liability under the policy. <u>Nova Cas. Co. v. Able Constr., Inc.</u>, 983 P.2d 575, 578 (Utah 1999); <u>see</u> <u>Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.</u>, 387 S.W.2d 22, 26 (Tex. 1965). The obligation is not absolute; it can be precluded when the facts alleged in the petition are excluded from coverage. <u>See</u> <u>Fidelity & Guar. Ins. Underwriters, Inc. v. McManus</u>, 633 S.W.2d 787, 788 (Tex. 1982); <u>see also</u> <u>Deseret Fed. Sav. & Loan Ass'n v. United States Fid. & Guar. Co.</u>, 714 P.2d 1143, 1146 (Utah 1986). Exclusion clauses, in general, are construed against the insurer. <u>See</u> <u>LDS Hosp. v. Capitol Life Ins. Co.</u>, 765 P.2d 857, 859 (Utah 1988); <u>cf.</u> <u>King</u>, 85 S.W.3d at 187 ("we resolve all doubts regarding the duty to defend in favor of the duty").

Insurers "may exclude from coverage certain losses by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided." <u>Alf v. State Farm Fire & Cas. Co.</u>, 850 P.2d 1272, 1275 (Utah 1993) (internal quotations omitted); <u>see</u> <u>Truck Ins. Exch. v. Musick</u>, 902 S.W.2d 68, 70 (Tex. Ct. App. 1995). An insurance exclusion, like any contractual provision, is ambiguous when it is susceptible to more than one reasonable interpretation. <u>National Union</u>

---

[3]The duty to defend is broader than the duty to indemnify. <u>Sharon Steel Corp. v. Aetna Cas. & Surety Co.</u>, 931 P.2d 127, 133 (Utah 1997); <u>Grimes Const., Inc. v. Great American Lloyds Ins. Co.</u>, 188 S.W.3d 805, 818 (Tex. App. 2006).

Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991); cf. Utah Farm Bureau v. Crook, 980 P.2d 686-87 (Utah 1999) ("A contract is ambiguous if it is unclear, omits terms, has multiple meanings, or is not plain to a person of ordinary intelligence and understanding."(citing Alf, 850 P.2d at 1274-75)). Any doubts as to ambiguity in an insurance policy are resolved against the insurer. E.g., Alf, 850 P.2d at 1274; Urethane Intern. Products v. Mid-Continent Cas. Co., 187 S.W.3d 172, 176 (Tex. App. 2006) (citation omitted). However, "not every difference in interpretation of a contract or an insurance policy amounts to an ambiguity." State Farm Fire and Cas. Co. v. Vaughan, 968 S.W.2d 931, 932 (Tex. 1998); see Alf, 850 P.2d at 1274-75.

The antitrust exclusion in the Hartford policy unambiguously precludes coverage for the malicious prosecution claims asserted against Reagan in the Harrill. The policy states that the insurance does not apply to any "personal and advertising injury [including malicious prosecution] arising out of a violation of any anti-trust law." As the district court found, all of the claims in Harrill "arise out of" allegations of antitrust violations. Both the petition and the amended petition in Harrill are replete with detailed allegations of Reagan's "anti-competitive actions" and "monopolistic conduct," and indistinguishable facts asserted in support of those allegations underlie every claim. Indeed, the common law claims for relief in both petitions, including the malicious prosecution claim in the amended petition, set forth no additional facts but are based on the "actions

of Defendant Reagan set forth above" or "outlined above." The amended petition, in particular, describes the "sham litigation" pursued by Reagan as "simply an abuse of the legal process for the sole purpose of maintaining Reagan's monopoly by increasing costs, causing delay, and unfairly harming landowners and Reagan's competitors."

> The phrase "arising out of" is broadly construed.
>
> [T]he term "arising out of" is ordinarily understood to mean originating from, incident to, or in connection with the item in question. . . . As used in a liability insurance policy, the words, "arising out of" are very broad, general and comprehensive. They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk for which coverage is provided.

Meadow Valley Contractors, Inc. v. Transcontinental Ins. Co., 27 P.3d 594, 597 (Utah Ct. App. 2001) (internal quotations omitted); see American States Ins. Co. v. Bailey, 133 F.3d 363, 370 (5th Cir. 1998) (deciding a Texas case); cf. General Agents Ins. Co. v. Arredondo, 52 S.W.3d 762, 767 (Tex. App. 2001) (the phrase "arise out of" requires only a causal connection). Here, the alleged malicious prosecution was for alleged sham lawsuits to maintain a monopoly. Thus, the requisite causal connection exists in this instance, where the malicious prosecution claim originates from, grows out of, or flows from, the alleged antitrust violations.

The court in Upsher-Smith Laboratories, Inc. v. Federal Ins. Co., 264 F. Supp. 2d 843, 851 (D. Minn. 2002), relied upon the same broad construction of the phrase "arising out of" to deny insurance coverage under an antitrust exclusion where the plaintiffs, much like the plaintiffs in Harrill, had stated common law causes of action as well. Faced with the same issue before this court, the Upsher court stated that the alleged "common law causes of action flow directly from the underlying antitrust allegations," and rejected the plaintiffs' argument that the antitrust exclusion in that case did not apply to exclude the common law and non-antitrust statutory claims where "the factual basis for all of the 'separate common law and non-antitrust claims' is the underlying antitrust action[]." Id. at 850.

We are persuaded by the Upsher court's rationale. We are not persuaded that the Harrill plaintiffs' malicious prosecution, sham litigation, or abuse of process claims were capable of standing alone, entirely separate from the antitrust claims. To the extent these claims constituted a distinct cause of action in the original petition, they were clearly "tag-along" or "add-on" causes of action dependent on the antitrust activities. Stating a distinct claim for "malicious prosecution" in the amended petition was obviously an afterthought. None of these claims can be divorced from the antitrust claims because the underlying

facts, if proven, were that Reagan filed sham litigation and abused the legal and regulatory processes *to maintain a monopoly*.[4]

Reagan challenges the district court's decision by arguing that an antitrust violation must be found before the antitrust exclusion applies. Reagan argues that the antitrust exclusion applies only to personal and advertising injury which arises out of actual – not *alleged* – violations of antitrust law.[5] Since no violations were found in <u>Harrill</u>, Reagan asserts, the exclusion is inapplicable and Hartford was obligated to defend. In other words, Reagan contends, Hartford was not entitled to rely on mere allegations of antitrust violations when it denied coverage.

Accepting this argument would render the exclusion invalid, as Hartford's obligation to defend would turn on a determination of liability. In other words,

---

[4]<u>Benjamin v. Amica Mut. Ins, Co.</u>, No. 20040974, 2006 WL 1868329 (Utah July 7, 2006), submitted by Reagan as supplemental authority, is inapposite because the policy exclusion at issue there differed significantly from the one at issue here. In <u>Benjamin</u>, the policy excluded intentional torts, and the underlying complaint alleged both intentional and unintentional torts based upon the same underlying facts. The Utah Supreme Court found that the insurer could plead alternatively and had a duty to defend the unintentional tort claims. <u>Id.</u> at *4. Here, the policy excludes both the antitrust claims *and* any personal or advertising injuries (defined in the policy to include malicious prosecution) arising out of antitrust violations. As in <u>Rosas v. Eyre</u>, 82 P.3d 185, 191 (Utah Ct. App. 2003), we look to the facts alleged in the underlying complaint to determine the claim, and, if the policy excludes that claim, the insurer is not obligated to defend.

[5]Reagan asserts that the court cannot assume the allegations are true. We do not assume that the allegations are true for purposes of analyzing of Hartford's duty to defend. We have determined that the policy excludes coverage for the claims asserted in the underlying litigation and, therefore, there are no allegations which, if proven, give rise to potential liability under the policy.

-10-

Hartford would be obligated to defend even the antitrust claims and, if violations were ultimately found, its only recourse would be to seek restitution from the insured for the costs of a defense it was never obligated to assume. We will not construe the contractual language of the insurance policy to create such an anomaly.

AFFIRMED.

Entered for the Court


Claire V. Eagan
District Judge