**CHURCH MUTUAL INSURANCE COMPANY, Plaintiff Counter Defendant–Appellant,**

v.

**Etimani MA'AFU, an individual; Rocky Mountain Conference of the United Methodist Church, a Colorado nonprofit corporation; a Utah non-profit corporation, f/k/a the Tongan United Methodist Church of Salt Lake City, Defendants Counterclaimants–Appellees,**

**and**

**The Salt Lake City Laumalie Ma'oni'oni Free Wesleyan Church of Tonga; Viliami Hosea, an individual; Havili Mone, an individual; Manase Vailea, an individual; Aisea Nai, an individual; Siosaia Haukinima, an individual; Lyndon Lauhingoa, an individual; Melanie Ngaue, an individual, Defendants,**

and

**The Board of Trustees of the Tongan United Methodist Church, Intervenor Defendant–Appellee.**

No. 15–4126

United States Court of Appeals, Tenth Circuit.

FILED July 21, 2016

Andrew B. McDaniel, Andrew D. Wright, Strong & Hanni, Sandy, UT,

Christian Andrew Preus, Bassford Remele, Minneapolis, MN, Robert W. Thompson, Snow, Christensen & Martineau, Salt Lake City, UT, for Plaintiff Counter Defendant–Appellant.

Alan C. Bradshaw, Christopher M. Glauser, Manning Curtis Bradshaw & Bednar, Salt Lake City, UT, Richard A. Marsh, Pipis Marsh Law, Longmont, CO, for Defendant Counterclaimants–Appellees.

Alan C. Bradshaw, Christopher M. Glauser, Manning Curtis Bradshaw & Bednar, Salt Lake City, UT, Richard A. Marsh, Pipis Marsh Law, Longmont, CO, for Defendant Intervenor–Appellee.

Robert C. Avery, Hutch U. Fale, Avery Burdsal & Fale, Orem, UT, for Defendants.

Before BRISCOE, EBEL, and BACHARACH, Circuit Judges.

## ORDER AND JUDGMENT [1]

Robert E. Bacharach, Circuit Judge

This appeal concerns an insurer's duty to defend. Church Mutual Insurance Company issued two policies that collectively insure the Tongan United Methodist Church, the church's trustees, and the Rocky Mountain Conference for the United Methodist Church. One policy insured the Tongan United Methodist Church and its trustees (the Church policy); the other policy insured the Rocky Mountain Conference, the Tongan United Methodist Church, and the church's trustees (the Conference policy). When the insureds are sued for covered losses, the policies required Church Mutual to provide a defense in the absence of an exclusion.

A trustee for the Tongan United Methodist Church (Mr. Etimani Ma'Afu) was sued in Utah state court, and the Conference intervened to assert its own claims. Mr. Ma'Afu and the Conference asked Church Mutual to provide a defense and reimburse defense costs. Church Mutual refused and sued in federal court for declaratory relief to establish the extent of its obligations under the insurance policies.

The district court granted partial summary judgment to the Conference and Mr. Ma'Afu, concluding that Church Mutual must defend Mr. Ma'Afu and reimburse the Conference for its defense costs. Church Mutual appeals, and we affirm in part and reverse in part.

## I. Background

To understand Church Mutual's appellate arguments, we begin with the dispute over control of the church and the resulting disagreement over the extent of Church Mutual's duty to defend.

## A. The Battle for Control of the Tongan United Methodist Church

This litigation grew out of an internal disagreement within the congregation of the Tongan United Methodist Church. In 2012, the church's congregation voted to elect a new board of directors. The new board of directors adopted two significant changes: (1) renaming the church "The Salt Lake City Laumalie Ma'oni'oni Free Wesleyan Church of Tonga," eliminating any reference to the United Methodist Church,[2] and (2) amending the church's articles of incorporation to eliminate any mention of *The Book of Discipline*, the governing instrument for the United

---

1. This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

2. We refer to the newly named church as the "Free Wesleyans."

Methodist Church.[3] The "old" board of directors, led by Mr. Ma'Afu and supported by the Rocky Mountain Conference, regarded these changes as invalid.

The Free Wesleyans insisted that the changes were valid and sued Mr. Ma'Afu in Utah state court. The Conference intervened as a defendant and counterclaimant in the Free Wesleyans' suit. The Conference also filed its own suit against the Free Wesleyans, and the state court consolidated the two suits.

## B. The Insurance Litigation, the Issues, and Our Conclusions

In connection with the consolidated state-court suit, Mr. Ma'Afu and the Conference demanded that Church Mutual provide a defense under the two insurance policies; Church Mutual refused, arguing that the insurance policies did not cover this suit.

Church Mutual then sued Mr. Ma'Afu and the Conference in federal court, seeking a declaratory judgment stating that Church Mutual had no duty to defend in the state-court suit. Mr. Ma'Afu and the Conference filed two counterclaims against Church Mutual, seeking

1. a declaratory judgment stating that Church Mutual had a duty to defend in the state-court suit and

2. recovery for Church Mutual's bad faith in refusing to provide a defense.

Both sides sought summary judgment. The district court denied Church Mutual's summary judgment motion and granted Mr. Ma'Afu and the Conference's motion for partial summary judgment.[4] In granting partial summary judgment, the court ordered Church Mutual to defend Mr. Ma'Afu and to pay the Conference's legal fees. The court declined to address the argument that Church Mutual's duty to defend would be capped by a $25,000 endorsement limit on lawsuits between affiliated entities.

Church Mutual appealed.[5] We conclude that the district court correctly held that both the Conference policy and the Church policy require Church Mutual to defend Mr. Ma'Afu in the state-court suit. But the Conference was not entitled to partial summary judgment on its claims involving Church Mutual's duty to reimburse the Conference for defense expenses under the Conference policy. We also conclude that the district court should have addressed the Conference policy's $25,000 endorse-

---

**3.** *See, e.g., St. Paul Church, Inc. v. Bd. of Trs. of Alaska Missionary Conference of United Methodist Church, Inc.*, 145 P.3d 541, 544 (Alaska 2006) ("The Book of Discipline 'is the book of law of The United Methodist Church.'" (quoting *Book of Discipline of the United Methodist Church* (Harriet Jane Olson et al. eds., 2000))).

**4.** Mr. Ma'Afu and the Conference did not seek summary judgment on their bad-faith claim against Church Mutual.

**5.** The appeal turns on the summary judgment rulings, but Church Mutual did not include any of the summary judgment briefs in the appendix. When material filings are omitted from the appendix, we may summarily affirm.

*See Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1238 (10th Cir. 1999) ("Precedent would ... justify affirmance based on [the appellant's] failure to provide a sufficient appendix."). But we decline to decide the appeal on this ground. *See Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 907–08 (10th Cir. 2009) (stating that we retain authority "to go beyond the appendix if we wish"). Instead, we exercise our discretion to take judicial notice of the summary judgment briefs filed in district court. *See In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1252 n.4 (10th Cir. 2014) (taking judicial notice of the briefs filed in district court when omitted from the appellate appendix).

ment limit and held that a genuine dispute of material fact existed over the applicability of the endorsement, potentially limiting Church Mutual's liability and precluding summary judgment on this issue.

## II. Appellate Jurisdiction

Mr. Ma'Afu and the Rocky Mountain Conference move to dismiss the appeal for lack of appellate jurisdiction. We deny this motion[6] but conclude that we lack pendent appellate jurisdiction over the ruling on the bad-faith claim.

### A. The Substance of the District Court's Order

■ Interlocutory orders, such as the district court's grant of partial summary judgment, are ordinarily not appealable until the district court issues a final order. *E.g.*, *Hutchinson v. Pfeil*, 105 F.3d 566, 568–69 (10th Cir. 1997). But a grant of an injunction is ordinarily immediately appealable regardless of whether the district court has issued a final order. 28 U.S.C. § 1292(a)(1).

The district court deemed its ruling an order granting partial summary judgment, not an injunction. Notwithstanding this label, we examine the order to determine whether it was substantively an injunction. *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1222 (10th Cir. 2009) (stating that in determining whether an order constitutes an injunction under § 1292(a)(1), the court looks to the substance of the order rather than its form).

To determine whether the order constituted an injunction, we start with the definition of an injunction. An injunction is an equitable decree that compels obedience and is enforceable by contempt. *New Mexico v. Trujillo*, 813 F.3d 1308, 1318 (10th Cir. 2016). The district court's ruling fit this definition because it compelled Church Mutual to (1) provide a defense to Mr. Ma'Afu in the state-court litigation and (2) reimburse the Conference for its legal expenses. And the district court could enforce its ruling through a contempt citation. *See Gon v. First State Ins. Co.*, 871 F.2d 863, 866 (9th Cir. 1989) (determining that an order directing an insurer to pay defense expenses was enforceable by contempt). As a result, the order served in substance as an injunction. *See Westar Energy*, 552 F.3d at 1224 (classifying an order directing a party to "immediately pay a specific sum of money ... and pay future amounts as they come due" as injunctive relief).[7]

---

6. Church Mutual argues that the motion to dismiss was untimely because Mr. Ma'Afu and the Conference filed the motion more than fourteen days after Church Mutual had filed a notice of appeal. *See* 10th Cir. R. 27.3(A)(3)(a) (requiring a motion to dismiss for lack of jurisdiction to be filed within fourteen days after a notice of appeal is filed, unless good cause is shown). But we have an independent duty to examine our jurisdiction regardless of the motion's timeliness. *See Tennille v. W. Union Co.*, 774 F.3d 1249, 1253 n.2 (10th Cir. 2014).

7. Other circuit courts have also held that they have appellate jurisdiction over interlocutory orders compelling insurers to tender a defense or pay defense costs, reasoning that these orders constitute injunctions. *See, e.g.,*

*Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 672 (3d Cir. 2016) (characterizing an order directing an insurer to defend its insured as injunctive relief that is immediately appealable under 28 U.S.C. § 1292(a)(1)); *W Holding Co. v. AIG Ins. Co.-P.R.*, 748 F.3d 377, 382–83 (1st Cir. 2014) (holding that an order requiring an insurer to advance defense costs constituted an injunction appealable under 28 U.S.C. § 1292(a)(1)); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Sahlen*, 999 F.2d 1532, 1535 (11th Cir. 1993) (holding that an order requiring an insurer to pay defense costs "constituted an injunction for purposes of § 1292(a)(1)"); *Gon v. First State Ins. Co.*, 871 F.2d 863, 866 (9th Cir. 1989) ("The order [directing the insurer to pay defense expenses] met the general definition of an injunction in that it was directed to [the

## B. Appellate Jurisdiction over the District Court's Legal Reasoning

Our jurisdiction includes the power to review the district court's reasoning underlying the grant of partial summary judgment. *See LaVine v. Blaine Sch. Dist.,* 257 F.3d 981, 987 (9th Cir. 2001) ("Because the district court's partial summary judgment order provides legal authority for the [injunctive relief] and is thus inextricably bound with it, we also have jurisdiction to review the legal authority underlying the [grant of injunctive relief]."); *see also Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1351 (10th Cir. 1989) (stating that once appellate jurisdiction is established under § 1292(a)(1), the appellate court can review "all reasons underlying" the order that establishes appellate jurisdiction). Thus, we may review the district court's analysis of the two insurance policies and resulting order for Church Mutual to defend Mr. Ma'Afu and reimburse the Conference for its legal expenses.

## C. Appellate Jurisdiction over the Insureds' Bad–Faith Claim

■ Mr. Ma'Afu and the Conference did not request summary judgment on their bad-faith claim against Church Mutual. Thus, the district court's ruling did not address the bad-faith claim in granting partial summary judgment. Nonetheless, Church Mutual asks us to exercise pendent appellate jurisdiction over a prior ruling on the bad-faith claim.[8]

Through pendent appellate jurisdiction, we have discretion to consider a ruling that is otherwise unappealable if (1) the ruling is inextricably intertwined with an appealable ruling or (2) appellate review of the unappealable ruling is necessary to ensure meaningful review of the appealable ruling. *Cox v. Glanz,* 800 F.3d 1231, 1255–56 (10th Cir. 2015).

These circumstances are absent: The district court's ruling on the bad-faith claim is not inextricably intertwined with the appealable rulings, and we can provide meaningful review of the appealable rulings without addressing the ruling on the bad-faith claim. Thus, we cannot exercise pendent appellate jurisdiction over the bad-faith claim.

## III. Our Standard of Review and the Applicable State Law Governing a Duty to Defend

This appeal presents multiple standards governing our review: (1) the federal-law standards for reviewing the district court's orders and (2) the Utah state-law standard for assessing an insurer's duty to defend. In reviewing Church Mutual's duty to defend, we apply Utah law. And in reviewing the insurance policies' other provisions, we apply the federal standard for summary judgment.

### A. The Standards for Reviewing the District Court's Rulings

We review the district court's grant of injunctive relief for an abuse of discretion, and we review de novo the district court's

insurer], was enforceable by contempt, and provided most of the substantive relief the insureds sought."); *Abercrombie & Fitch Co. v. Fed. Ins. Co.,* 370 Fed.Appx. 563, 568 (6th Cir. 2010) (unpublished) ("[T]he district court's grant of partial summary judgment [directing the insurer to advance litigation expenses] was an injunctive order, over

which we have jurisdiction under 28 U.S.C. § 1292(a)(1).").

8. In ruling on Church Mutual's motion for summary judgment, the district court denied summary judgment on the bad-faith claim. But the denial of Church Mutual's motion for summary judgment is not before us.

grant of partial summary judgment. *See Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 961 (10th Cir. 2002) (injunctive relief); *Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1497 (10th Cir. 1994) (partial summary judgment). Church Mutual challenges only the grant of partial summary judgment, not the district court's rulings on the equitable factors underlying the grant of injunctive relief. As a result, we engage in de novo review of the grant of partial summary judgment.

In conducting de novo review, we consider the evidence in the light most favorable to Church Mutual as the nonmoving party. *Witt v. Roadway Express*, 136 F.3d 1424, 1429 (10th Cir. 1998). In that light, doubts are resolved against the award of summary judgment. *See World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985) ("In reviewing a grant of summary judgment we must ... resolve all doubts in favor of the existence of triable issues of fact.").

## B. The Standard for Assessing an Insurer's Duty to Defend

The burden on Mr. Ma'Afu and the Conference, as movants seeking summary judgment, is governed by the nature of the underlying issue: Church Mutual's duty to defend.

The parties agree that Church Mutual's duty to defend is governed by Utah law. *See Boardwalk Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co.*, 816 F.3d 1284, 1293 (10th Cir. 2016) (applying the state law that the insurer and insured agreed was applicable). In Utah, the duty to defend is broad: "[I]nsurance policies ... are to be 'construed liberally in favor of the insured....'" *Farmers Ins. Exch. v. Versaw*, 99 P.3d 796, 800 (Utah 2004) (quoting *U.S. Fid. & Guar. Co. v. Sandt*, 854 P.2d 519, 521 (Utah 1993)). If factual ambiguities make insurance coverage uncertain, the insurer must provide a defense. *See Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1215 (Utah 2006) ("When in doubt, defend." (quoting Appleman on Insurance Law and Practice § 136.2[C] (2d ed. 2006))). To avoid the duty to defend, Church Mutual must "demonstrate that none of the allegations of the underlying claim is potentially covered (or that a policy exclusion conclusively applies to exclude all potential for such coverage)." *Headwaters Res., Inc. v. Ill. Union Ins. Co.*, 770 F.3d 885, 891 (10th Cir. 2014) (quoting *Cincinnati Ins. Co. v. AMSCO Windows*, 921 F.Supp.2d 1226, 1236–37 (D. Utah 2013)).

Under Utah law, we ordinarily apply the "eight corners" rule, comparing the four corners of the Free Wesleyans' complaint to the four corners of the insurance policy. *See Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733, 737 (Utah 2011). The applicability of the eight corners rule depends on the policy language. *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1171–72 (10th Cir. 2010).

In the Conference policy, Church Mutual promised to defend Mr. Ma'Afu and the Conference "against any 'suit' seeking payment for 'loss.'" Appellant's App'x, vol. I at 118. The term "suit" is defined in the policy as "a civil proceeding" in which a covered loss "is alleged." *Id.* at 126.

The Church policy uses similar language. In this policy, Church Mutual promises to defend Mr. Ma'Afu "against any 'suit'" seeking certain damages. *Id.* at 179. The term "suit" is defined as "a civil proceeding in which [certain] damages ... are alleged." *Id.* at 188.

Given the language in both policies, we apply the eight corners rule and compare each policy's terms to the Free Wesleyans'

allegations in the state-court proceedings.[9] *See Bartile Roofs*, 618 F.3d at 1172 (holding that under Utah law, the policy definition of the term "suit" made the insurer's duty to defend dependent on the underlying allegations of liability).

## IV. The Conference Policy

The district court held that Church Mutual had a duty to defend Mr. Ma'Afu and to reimburse the Conference under the Conference policy. We agree that Church Mutual had a duty to defend Mr. Ma'Afu. But Church Mutual did not have a duty to reimburse the Conference for its legal expenses. And the district court should not have granted partial summary judgment in the face of genuine disputes of material fact on whether Church Mutual's duty is limited to defense costs of $25,000 or less.

The district court should have denied summary judgment on (1) reimbursement to the Conference for legal expenses and (2) Church Mutual's duty to pay defense costs exceeding $25,000.

### A. Church Mutual's Duty to Defend Mr. Ma'Afu

■ Church Mutual denies that it has a duty to defend Mr. Ma'Afu under the Conference policy, making three arguments:

1. The Free Wesleyans did not allege that Mr. Ma'Afu had acted in his capacity as a trustee of the church.

2. The state-court suit was brought by a named insured, triggering a policy exclusion for suits between insured parties.

3. The Free Wesleyans alleged that Mr. Ma'Afu had personally profited from unlawful acts, triggering a poli-

cy exclusion for claims involving "personal profit."

We reject each argument.

### 1. Mr. Ma'Afu's Conduct as a Church Trustee

The Conference policy insures the directors, officers, and trustees of all churches named in the policy as "affiliated congregations." Appellant's App'x, vol. I at 100–05, 121. One of these affiliated congregations is the Tongan United Methodist Church. *Id.* at 105. Thus, Mr. Ma'Afu would be insured under the Conference policy if he had undertaken the alleged conduct exclusively in his role as a director, officer, or trustee of the Tongan United Methodist Church.

Church Mutual argues that the Free Wesleyans did not allege in their complaint that Mr. Ma'Afu had been a church director, officer, or trustee, or that he had acted in this capacity. But the eight corners rule does not require affirmative allegations in the complaint about the capacity in which Mr. Ma'Afu was acting. Rather, we will conclude that Mr. Ma'Afu was acting as a church director, officer, or trustee unless this possibility is ruled out in the underlying state-court complaint. *See* Part III(B), above. In our view, the Free Wesleyans' complaint leaves open the possibility that Mr. Ma'Afu was acting as a church director, officer, or trustee.

The Free Wesleyans' complaint is silent on whether Mr. Ma'Afu had been a church trustee before the congregational vote. Instead, the Free Wesleyans allege that Mr. Ma'Afu acted in October 2012 and December 2012 without authority from an entity identified as "the Corporation." Appellant's App'x, vol. I at 64–65. But the meaning of

9. Mr. Ma'Afu and the Conference argue that the eight corners rule does not apply to Church Mutual's arguments involving policy exclusions. We need not address this argu-

ment. As discussed below, Church Mutual incurred a duty to defend even if we confine our review of the exclusions to the allegations in the state-court proceedings.

"the Corporation" is unclear. If it refers to the entity previously known as the Tongan United Methodist Church, the allegation would indicate that Mr. Ma'Afu was acting without authority from anyone. If "the Corporation" refers to the Free Wesleyans' corporate entity, "the Salt Lake City Laumalie Ma'oni'oni Free Wesleyan Church of Tonga," the Free Wesleyans would simply be alleging that their corporation had not authorized Mr. Ma'Afu to take action. Under this interpretation, Mr. Ma'Afu could have obtained authority from the Tongan United Methodist Church, which is a named insured.

Mr. Ma'Afu and the Conference urge the second interpretation, pointing out that the Free Wesleyans' complaint defined "the Corporation" as the corporate entity "The Salt Lake City Laumalie Ma'oni'oni Free Wesleyan Church of Tonga, Inc., a Utah Non–Profit Corporation." *Id.* at 61. That is not the name of the entity identified in the Conference policy as a "named insured"; the entity named in the policy is the "Tongan United Methodist Church." *Id.* at 105. Thus, one can plausibly interpret the state-court complaint as silent on Mr. Ma'Afu's authority to act as a trustee on behalf of the Tongan United Methodist Church.[10]

Church Mutual points out that the Free Wesleyans also alleged that (1) they had changed the name of the church and (2)

the name change showed that there was only a single entity because the Corporation and the church constituted the same entity. Under this interpretation of the Free Wesleyans' complaint, Mr. Ma'Afu was never authorized to act for a named insured. This interpretation is plausible and suggests that Mr. Ma'Afu was not acting on behalf of a named insured at the time of his alleged misconduct.

Because both interpretations are plausible, we cannot rule out the possibility that Mr. Ma'Afu acted as a trustee for the Tongan United Methodist Church, a named insured under the Conference Policy. Because of this possibility, we conclude that Mr. Ma'Afu could obtain a defense because of the possibility that he was a trustee acting on behalf of a named insured.

### 2. Exclusion for Suit Brought by a Named Insured

■ Church Mutual need not defend "[a]ny claim which is brought by or on behalf of ... any insured." *Id.* at 120. The underlying state-court suit was brought by an entity named "The Salt Lake City Laumalie Ma'oni'oni Free Wesleyan Church of Tonga." Thus, we must determine whether this entity was a named insured.

The policy included a named insured, the "Tongan United Methodist Church."

---

10. This interpretation is supported by three of the Free Wesleyans' other allegations in the state-court proceedings:

1. "Mr. Ma'Afu ... [had] formerly held positions of authority within the corporation."
2. Mr. Ma'Afu "formerly [had] authority to act for the Corporation."
3. Mr. Ma'Afu had "held leadership roles [for 'the Corporation'] and had authority at certain times to act on behalf of the Corporation."

Mem. in Supp. of Mot. for a TRO at 5–7, *Salt Lake City Laumalie Ma'Oni'Oni Free Wesleyan*

*Church of Tonga v. Ma'Afu*, No. 120908228 (Salt Lake Cty. Dist. Ct. Dec. 7, 2012). In addition, the Free Wesleyans alleged that they had recently "remove[d] Defendant [Mr. Ma'Afu] from the [Corporation's] Board of Directors." Reply Mem. in Supp. of Pl.'s Mot. to Stay Proceedings at 2, *Salt Lake City Laumalie Ma'Oni'Oni Free Wesleyan Church of Tonga v. Ma'Afu*, No. 120908228 (Salt Lake Cty. Dist. Ct. Apr. 2, 2013). These allegations indicate that at least some of the alleged misconduct took place when Mr. Ma'Afu was acting as a trustee of the Tongan United Methodist Church.

The Free Wesleyans alleged in their complaint that they had changed the name of the church to "The Salt Lake City Laumalie Ma'oni'oni Free Wesleyan Church of Tonga." Thus, according to Church Mutual, the state-court suit was brought by Tongan United Methodist Church under its new name.

The parties dispute the validity of the name change, and we may assume without deciding that the name change was valid. With that assumption, we must decide whether the newly named church remained a named insured. Under its old name, the church was a named insured, as the policy includes the Tongan United Methodist Church as a named insured. But the policy identifies the named insureds, including the Tongan United Methodist Church, as "affiliated congregations." Presumably this "affiliation" refers to association with the policyholder, the Rocky Mountain Conference.

If affiliation was a precondition of being a named insured, disaffiliation would have terminated coverage of the Free Wesleyans' newly named church. Thus, it is possible to read the policy language as covering the Tongan United Methodist Church only while it remained affiliated with the Rocky Mountain Conference.[11] The resulting issue is whether the Free Wesleyans disaffiliated from the Conference. From the complaint, it is impossible to tell one way or another.

The Free Wesleyans' complaint bears some signs of disaffiliation. For instance, the Free Wesleyans amended the church's articles of incorporation to delete references to *The Book of Discipline*.[12] The deletion bears potential significance because *The Book of Discipline* is the governing instrument of the United Methodist Church. *See, e.g., Gen. Council on Fin. & Admin. of the United Methodist Church v. Superior Court of Cal., San Diego Cty.,* 439 U.S. 1369, 1370, 99 S.Ct. 35, 58 L.Ed.2d 77 (1978) (Rehnquist, Circuit Justice) (stating that the Book of Discipline "contains the constitution and bylaws of the Methodist Church"); *St. Paul Church, Inc. v. Bd. of Trs. of Alaska Missionary Conference of United Methodist Church, Inc.,* 145 P.3d 541, 544 (Alaska 2006) ("The Book of Discipline 'is the book of law of The United Methodist Church.'" (quoting *Book of Discipline of the United Methodist Church* (Harriet Jane Olson et al. eds., 2000))); *Mills v. Standing Gen. Comm'n on Christian Unity,* 39 Misc.3d 296, 958 N.Y.S.2d 880, 881 (Sup. Ct. 2013) ("The Book of Discipline sets forth the law and doctrine of the Methodist Church."); *see also* Part I(A), above. Thus, in our view, the elimination of references to *The Book of Discipline* creates ambiguity on whether the Free Wesleyans remained affiliated with the Conference.

The changes to the articles of incorporation are not dispositive, for the Free Wesleyans do not spell out in their com-

**11.** At oral argument, Church Mutual argued that (1) regardless of the Free Wesleyan Church's affiliation with the Rocky Mountain Conference, the Free Wesleyan Church must have been a named insured because the church was listed on the policy, and (2) in order to remove coverage, the Conference had to file an endorsement with Church Mutual, deleting the congregation from the policy. Oral Arg. at 7:00–10:00. But Church Mutual did not raise this argument in its appellate briefs, and "issues may not be raised for the first time at oral argument." *Dodds v. Richardson,* 614 F.3d 1185, 1208 (10th Cir. 2010) (quoting *United States v. Abdenbi,* 361 F.3d 1282, 1290 (10th Cir. 2004)).

**12.** With their complaint, the Free Wesleyans attached both the old and new versions of the articles of incorporation. We can consider these documents under the eight corners rule. *See* Utah R. Civ. P., Rule 10(c) ("An exhibit to a paper is a part thereof for all purposes.").

plaint whether they remained affiliated with the Rocky Mountain Conference. All we can say, with any confidence, is that the amended articles of incorporation created uncertainty over whether the Free Wesleyans' newly named church was an "affiliated congregation" under the Conference policy. In light of this uncertainty, Church Mutual has a duty to defend. *See Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1215 (Utah 2006) ("Where factual questions render coverage uncertain . . . the insurer must defend until those uncertainties can be resolved against coverage."); *see also* Part III(B), above. Thus, the Conference and Mr. Ma'Afu were entitled to summary judgment on Church Mutual's argument against a duty to defend based on the exclusion.

### 3. The "Personal Profit" Exclusion

■ Church Mutual denies a duty to defend Mr. Ma'Afu against any claim that is based on his allegedly illicit personal gain, invoking a policy exclusion for "[a]ny claim . . . [b]ased on any personal profit or advantage of the 'Directors, Officers, or Trustees' to which they were not legally entitled." Appellant's App'x, vol. I at 120. Church Mutual can prevail on this argument only if *none* of the claims against Mr. Ma'Afu would have been covered or if *all* of the claims would have fallen within a policy exclusion. *See AMCO Ins. Co. v. Inspired Techs., Inc.*, 648 F.3d 875, 880 (8th Cir. 2011) (applying Minnesota law) (stating that for an insurance policy exclusion to preclude an insurer's duty to defend, "no single claim" can fall outside the policy exclusion); *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 875 (5th Cir. 2009) (applying Louisiana law) ("A duty to defend will exist unless the allegations are such that every claim pleaded in the complaint . . . unambiguously falls within an exclusion."). Because some of the covered claims might not fall within the exclusion,

we reject Church Mutual's argument against a duty to defend.

In their complaint, the Free Wesleyans alleged that Mr. Ma'Afu had committed conversion by improperly accessing corporate accounts and exercising control over corporate property. Some of this conduct might have personally benefited Mr. Ma'Afu. *See, e.g.*, Appellant's App'x, vol. I at 68 (alleging that Mr. Ma'Afu "took" certain corporate property and "converted [it] to his own use").

But other alleged wrongdoing might not have personally benefited Mr. Ma'Afu, such as misrepresentation of his authority to "open new accounts in the Corporation's name." *Id.* at 63. If Mr. Ma'Afu did not profit from the new corporate accounts, this part of the claim would have fallen outside the exclusion.

Similarly, the Free Wesleyans alleged that Mr. Ma'Afu had improperly allowed others to use the Free Wesleyans' real property. *Id.* at 65. Again, the Free Wesleyans did not suggest that Mr. Ma'Afu had personally profited from this activity.

Because some claims against Mr. Ma'Afu were potentially covered and would fall outside of the "personal profit" exclusion, Church Mutual incurred a duty to defend all of the claims. *See Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1216 (Utah 2006) (stating that when some claims are covered and others are not, the insurer must provide a defense on the entire suit, at least until all covered claims are eliminated from the suit). Thus, the Conference and Mr. Ma'Afu were entitled to summary judgment on the applicability of the "personal profit" exclusion.

\* \* \*

Church Mutual argues that it lacked a duty to defend Mr. Ma'Afu in the underlying suit under the Conference policy, but

Church Mutual's arguments do not exclude the possibility of coverage. As a result, the Conference policy requires Church Mutual to defend Mr. Ma'Afu.

### B. The Duty to Reimburse the Conference for Its Defense Costs

█ The Rocky Mountain Conference intervened in the Free Wesleyans' suit against Mr. Ma'Afu and filed a separate suit against the Free Wesleyans in Utah state court. In both suits, the Conference asserted claims against the Free Wesleyans; the Free Wesleyans have not asserted any claims against the Conference. Nonetheless, the Conference argues that Church Mutual must reimburse the Conference for its legal expenses. The district court agreed and granted partial summary judgment to the Conference on this issue. We disagree with the district court, for the Free Wesleyans have not asserted a claim for a covered loss against the Conference.

The Conference policy insures against "any 'suit' seeking payment for 'loss.' " Appellant's App'x, vol. I at 118. And under the policy, the term " 'loss' does not include ... injunctive relief." Appellant's App'x, vol. I at 125; see Part III(B), above.

In light of this policy language, we must determine whether the Free Wesleyans sued the Conference for payment for a loss. In their complaint against Mr. Ma'Afu, the Free Wesleyans requested three forms of relief: (1) injunctive relief, (2) declaratory relief, and (3) monetary damages. None of these forms of relief seek payment from the Conference for a covered loss.

First, the Free Wesleyans' claim for an injunction does not trigger coverage, for the Conference policy provides that the term " 'loss' does not include ... injunctive relief." Appellant's App'x, vol. I at 125.

Second, the Free Wesleyans' request for a declaratory judgment is not covered by the policy. In Utah, a declaratory judgment inherently "stands by itself and does not involve executory or coercive relief." *Kapetanov v. Small Claims Court of Ogden*, 659 P.2d 1049, 1051 (Utah 1983). Thus, the Free Wesleyans' request for a declaratory judgment does not seek payment or any other form of coercive relief from the Conference. Instead, the Free Wesleyans seek only a declaration setting forth "the rights, status, and other legal relations between the parties." Appellant's App'x, vol. I at 68; see also id. at 67 (seeking a declaratory judgment "determining [the Free Wesleyans'] ... ownership, rights and obligations under Utah law").

Third, the Free Wesleyans request an award for "the value of the property converted by [Mr. Ma'Afu]." *Id.* at 68. The Free Wesleyans seek payment from Mr. Ma'Afu, not the Conference.

The Conference argues that it asserted claims in the underlying litigation "to eliminate [Mr.] Ma'Afu's potential liability related to the Free Wesleyans' claim of ownership and control of property." Appellees' Resp. Br. at 51; see also id. at 52 ("If [the Conference] prevails, the Free Wesleyans' claim for damages is eliminated."). But no one argues that (1) the Conference could ultimately bear liability for the Free Wesleyans' conversion claim against Mr. Ma'Afu or (2) the Conference would bear a legal obligation to indemnify Mr. Ma'Afu for an award on the conversion claim. Thus, the conversion claim is not a claim seeking payment for a loss from the Conference.

According to the Conference, it asserted certain claims because the Free Wesleyans assert rights over assets that are held in trust for the United Methodist Church. But the policy expressly confines coverage

to suits seeking payment for a loss, and the Free Wesleyans have not sought payment from the Conference for a loss. In these circumstances, we conclude that (1) the Conference policy does not provide coverage for the Conference's legal expenses, and (2) Church Mutual is not required to reimburse the Conference for its legal expenses.[13]

## C. The Conference Policy's Endorsement Limiting Coverage for Affiliated Entity Disputes

Church Mutual also argues that even if it has a duty to defend Mr. Ma'Afu, any potential duties would be limited by the policy's "Affiliated Entity Dispute" endorsement. This endorsement limits coverage to $25,000 for disputes between individuals or entities affiliated with a named insured. See id. at 106, 139–40.

Church Mutual invoked this endorsement when objecting to Mr. Ma'Afu and the Conference's motion for partial summary judgment, but the district court did not rule on this objection. In our view, the district court should have denied the motion for partial summary judgment to the extent that the Conference and Mr. Ma'Afu had sought a declaration that Church Mutual owed more than $25,000 in legal expenses.

We address this issue based on the standard for deciding a motion for summary judgment. See Part III(A), above. To obtain summary judgment on this issue, Mr. Ma'Afu and the Conference needed to show as a matter of law that the Free

Wesleyans had disaffiliated from the Conference before suing in state court. We conclude that Mr. Ma'Afu and the Conference had not made this showing, for a reasonable fact-finder could regard the Free Wesleyans as an "affiliated entity." See Part IV(A)(2), above. As a result, the district court should have denied the motion for partial summary judgment by Mr. Ma'Afu and the Conference to the extent that they sought legal expenses in excess of $25,000.[14]

## V. The Church Policy

The parties also disagree on Church Mutual's duty to defend Mr. Ma'Afu under the Church policy. This policy requires Church Mutual to defend Mr. Ma'Afu in any "personal injury" suit "seeking ... damages." Appellant's App'x, vol. I at 179. A "personal injury" includes "wrongful eviction from, wrongful entry into, or invasion[s] of the right of private occupancy of a ... premises." Id. at 189. Applying the eight corners rule, we compare the policy language to the Free Wesleyans' complaint. See Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co., 266 P.3d 733, 737 (Utah 2011).

The Free Wesleyans alleged that Mr. Ma'Afu had "exercise[d] control over the Corporation's property." Appellant's App'x, vol. I at 64; see also id. at 63 (alleging that Mr. Ma'Afu "improperly use[d] and control[led] corporate property"), 67 (alleging that "Mr. Ma'Afu has ... collected rents from the Corporation's rental properties"). Based on this allega-

---

13. Church Mutual argues that the Conference's claims would fall under a policy exclusion. We need not address this argument because the Conference has not sustained a covered loss. See Vestin Mortg., Inc. v. First Am. Title Ins. Co., 101 P.3d 398, 403 (Utah Ct. App. 2004) ("If [the insured's] clams are not covered, then we need not reach the exclusions."), aff'd, 139 P.3d 1055 (Utah 2006).

14. As discussed above, the Conference is not entitled to coverage in the underlying litigation. See Part IV(B), above. Thus, if the endorsement applies, it would limit coverage only as to Mr. Ma'Afu.

tion, the district court concluded that the Free Wesleyans had alleged wrongful eviction, wrongful entry, or invasion of the right to occupancy. Thus, the district court deemed the Free Wesleyans' suit as one for "personal injury" and held that Church Mutual had an obligation to defend Mr. Ma'Afu under the policy's personal-injury coverage.

Church Mutual challenges this conclusion, arguing that the Free Wesleyans

- did not seek damages for wrongful exercise of control over real property,
- were an affiliated entity, triggering a policy exclusion for claims asserted by an affiliated entity, and
- did not allege that Mr. Ma'Afu was acting as a church trustee, which was necessary to trigger a duty to defend.

We reject each argument and conclude that Church Mutual bears a duty to defend Mr. Ma'Afu under the Church policy.

### A. Coverage for Wrongful Exercise of Control over Real Property

■ The Free Wesleyans' complaint alleges that Mr. Ma'Afu "exercise[d] control over ... real property." *Id.* at 64; *see also id.* at 67. That complaint includes allegations that Mr. Ma'Afu wrongfully

- entered the Free Wesleyans' property,
- invaded the right of occupancy of the Free Wesleyans' premises, and
- took the Free Wesleyans' property.

These allegations created the potential for coverage. *See Valley Imp. Ass'n, Inc. v. U.S. Fid. & Guar. Corp.*, 129 F.3d 1108, 1117 (10th Cir. 1997) (applying New Mexico law) (concluding that the duty to defend for a personal-injury claim is triggered by a claim involving trespass by allowing cattle to roam onto property, reasoning that this conduct constitutes wrongful entry or eviction or other invasion of the right of private occupancy); *accord John T. Doyle*

*Tr. v. Country Mut. Ins. Co.*, 380 Ill.Dec. 320, 8 N.E.3d 490, 497 (Ill. Ct. App. 2014) (concluding that a landlord's removal of a tenant-insured's personal items amounted to "depriv[ation]" of [the tenant's] right to enjoy the leased premises" and constituted a "personal injury"); *W. Cas. & Sur. Co. v. Int'l Spas of Ariz., Inc.*, 130 Ariz. 76, 634 P.2d 3, 6 (Ariz. Ct. App. 1981) (concluding that when a landlord terminated a lease and allegedly converted lessee's personal property, the conversion of the lessee's personal property was covered under the lessee's personal-injury coverage).

Church Mutual counters that the Free Wesleyans (1) alleged only prospective harm and (2) did not seek damages for wrongful occupation of the Free Wesleyans' real property. We disagree with both arguments.

First, the Free Wesleyans did not allege only prospective harm, for they alleged that Mr. Ma'Afu had improperly taken and controlled their property. *See, e.g.,* Appellant's App'x, vol. I at 67 (alleging that Mr. Ma'Afu "*has* ... collected rents from the Corporation's rental properties" (emphasis added)). By asserting prior invasion of the Free Wesleyans' right of occupancy, these allegations create the possibility of coverage. *See Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1215 (Utah 2006); *see also* Part III(B), above.

Second, the Free Wesleyans' complaint can reasonably be read to include a claim for damages for wrongful occupation of premises that the Free Wesleyans purportedly own. The Free Wesleyans' complaint sought damages only under their cause of action for conversion. Thus, coverage could exist only if the Free Wesleyans had alleged conversion of real property.

On its face, the Free Wesleyans' conversion claim appeared limited to personal property, involving Mr. Ma'Afu's unlawful withdrawal of money from a bank account.

The withdrawal of money would not have triggered coverage because Mr. Ma'Afu did not wrongfully evict, enter, or invade the right of occupancy to withdraw the money.

But in their complaint, the Free Wesleyans also alleged in the conversion claim that Mr. Ma'Afu had taken "the above mentioned corporate property." Appellees' Supp. App'x at 8. Thus, we must consider what constituted the "above mentioned corporate property."

The complaint defined that property to include real property and incorporated this definition in the conversion claim. The Free Wesleyans then sought monetary relief for the value of the property converted by Mr. Ma'Afu.[15] Thus, the Free Wesleyans' complaint can reasonably be read to include a request for damages from wrongful occupation of real property. Under this interpretation, coverage was possible, triggering a duty to defend. *See* Part III(B), above.

### B. The Free Wesleyans' Possible Status as an "Affiliated Entity"

Church Mutual also argues that it need not defend Mr. Ma'Afu under the Church policy because the Free Wesleyans were an "affiliated entity." It is true that under the insurance policy, Church Mutual need not defend personal injury claims asserted by an "[a]ffiliated [e]ntity." Appellant's App'x, vol. I at 189. But as discussed above, the Free Wesleyans' status as an affiliated entity is at least ambiguous. *See* Parts IV(A)(2), IV(C), above. For the reasons discussed above, the possibility of dis-

affiliation creates a duty to defend. *See* Part IV(A)(2), above.

### C. Mr. Ma'Afu's Actions in his Capacity as a Church Trustee

Church Mutual also argues that Mr. Ma'Afu was not acting as a trustee of the church when he allegedly interfered with the Free Wesleyans' right of occupancy. But the Free Wesleyans (1) alleged that Mr. Ma'Afu had been acting on at least some occasions as a church trustee and (2) indicated that Mr. Ma'Afu had acted in this capacity when exercising control over the church's real property. *See* Part IV(A)(1), above. As a result, we reject this challenge to the summary judgment ruling.

\* \* \*

Church Mutual argues that it lacked a duty to defend Mr. Ma'Afu in the underlying suit under the Church policy, but Church Mutual's arguments do not exclude the possibility of coverage. Thus, Church Mutual must defend Mr. Ma'Afu under the Church policy.

### VI. Conclusion

We conclude that we have appellate jurisdiction; accordingly, we deny the motion to dismiss the appeal. But we lack jurisdiction to address Church Mutual's challenges to the rulings on its own summary judgment motion, including the ruling on the bad-faith claim.

We reverse two rulings:

1.  the grant of summary judgment to the Conference on its claims that Church Mutual must reimburse the

---

15. Under Utah law, conversion involves personal property, not real property. *Frisco Joes, Inc. v. Peay*, 558 P.2d 1327, 1330 (Utah 1977). But the policy does not limit coverage to legally viable claims. *See Deseret Fed. Sav. & Loan Ass'n v. U.S. Fid. & Guar. Co.*, 714 P.2d 1143, 1147 (Utah 1986) (stating that an insurer bears a duty to defend "even if the allegations in a suit are groundless, false, or fraudulent"). Thus, we focus on what the Free Wesleyans claimed rather than whether those claims would be legally viable in Utah.

Conference for its legal expenses and

2. the grant of partial summary judgment to Mr. Ma'Afu and the Conference without acknowledging a remaining factual issue involving the $25,000 endorsement limit for disputes between affiliated entities.

We affirm in all other respects.